Filed 1/29/16  P. v. Pierson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041270 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS130126) |
| v. | |
| LEVESTER TOOB PIERSON, | |
| Defendant and Appellant. | |

**STATEMENT OF THE CASE**

An information, filed on July 22, 2013, charged defendant Levester Pierson with pandering by inducement (Pen. Code, § 266i, subd. (b); count 1[alleging a 17-year-old victim]), human trafficking (Pen. Code, § 236.1, subd. (a); count 2), and kidnapping for ransom or extortion (Pen. Code, § 209, subd. (a); count 3).  The information alleged that defendant had served one prior prison term (Pen. Code, § 667.5, subd. (b)).

On April 25, 2014, a jury found defendant guilty on count 1 and count 2.  The jury was unable to reach a verdict on count 3, and the trial court declared a mistrial on that count.  Defendant admitted the prior prison term allegation on April 25, 2014.

On June 3, 2014, defendant pleaded no contest to making criminal threats (Pen. Code, § 422), a fourth count that was added to the information.  Count 3 was dismissed on the motion of the district attorney.

The trial court sentenced defendant on June 3, 2014. The trial court imposed a total sentence of nine years in prison, calculated as follows: an eight-year term for the human trafficking conviction, a one-year term for the prior prison term allegation, a concurrent term of six years for the pandering conviction, and a concurrent term of three years for the criminal threats conviction. At the sentencing hearing, the trial court imposed a stay-away order requiring defendant to have no contact with the victim of the crimes.

Defendant now appeals from the judgment of conviction. Defendant makes three arguments on appeal: 1) the trial court erred in failing to sua sponte instruct on contributing to the delinquency of a minor as a lesser included offense of pandering; 2) the trial court lacked authority to issue the stay-away order; and 3) the prison term imposed for the pandering conviction must be stayed pursuant to Penal Code section 654.

As set forth below, we reach the following conclusions: the trial court was not obligated to instruct on contributing to the delinquency of a minor; the trial court had statutory authority to impose the stay-away order, but it erred in failing to specify the duration of the stay-away order; and the concurrent prison term imposed for the pandering conviction must be stayed pursuant to Penal Code section 654. Given these conclusions, we will reverse and remand with directions to re-impose the stay-away order with a specified duration and to stay the prison term for the pandering conviction.

STATEMENT OF THE FACTS

*The Prosecution's Evidence*

Jane Doe met defendant in October of 2011. Jane Doe was 17 years old, and she had run away from home. Jane Doe did not have any money for rent. Defendant told Jane Doe to move into his San Leandro home, and Jane Doe lived there without paying any rent to defendant.

2

Jane Doe engaged in prostitution between October 2011 and early February 2012. During that time period, she made "multiple" trips to Santa Cruz, Monterey, and Berkeley in order to engage in prostitution. A person named Lisa Banner accompanied Jane Doe on those trips. Jane Doe gave the money generated by her prostitution to Banner, and Banner then gave the money to defendant.

Jane Doe testified that defendant was her "pimp." She explained that all the money generated by her prostitution went to defendant, and that Banner was "just a middle person" who worked for defendant. Defendant and Jane Doe had "multiple conversations" regarding the "prostitution and the way it was operating with [Jane Doe] working and [defendant] getting the money."

Jane Doe had conversations with defendant during which she said she did not want to work as a prostitute. Defendant told Jane Doe that she owed him money. He told Jane Doe that she would "have to work that money off" if she "wanted to leave."

On the evening of February 7, 2012, Jane Doe cried and told Banner that she did not want to engage in prostitution. In Jane Doe's presence, Banner made phone calls to defendant, and Banner told defendant that Jane Doe did not want to work as a prostitute. During one phone call, Jane Doe heard defendant yell and say, "Bring that bitch to me." During another phone call, defendant said he was "going to have some people take care of" Jane Doe. Banner "passed on" defendant's comment to Jane Doe. Jane Doe perceived the comment as a threat of physical violence. Jane Doe told Banner that she would work as a prostitute.

Later on the night of February 7, 2012, Banner took Jane Doe to a hotel in Monterey, and Jane Doe engaged in an act of prostitution. Jane Doe gave the money that she earned from the prostitution to Banner. Jane Doe then decided that she wanted to "get away." Jane Doe called her mother from the hotel lobby, and she told her mother to

3

come get her. Police arrived at the hotel, and Jane Doe told police that she engaged in prostitution due to threats from defendant and Banner.

***Defendant's Testimony***

Defendant testified on his own behalf. He testified that he had never worked as a pimp or panderer.

When defendant met Jane Doe in 2011, he "got the impression" that she was a prostitute. Defendant knew that Jane Doe was 17 years old. Defendant testified that Jane Doe was "infatuated" with him and "made advances" towards him.

Banner phoned defendant on February 7, 2012. Banner told defendant that she and Jane Doe were in Monterey. Banner said that Jane Doe was being lazy, and defendant heard Banner and Jane Doe arguing.

Defendant denied receiving prostitution earnings from Jane Doe or Banner. Defendant denied knowing that Jane Doe and Banner were working together in a prostitution business.

## DISCUSSION

### I. *Sua Sponte Instruction on Contributing to the Delinquency of a Minor*

Defendant contends that we must reverse the pandering conviction because the trial court erred in failing to sua sponte instruct on contributing to the delinquency of a minor as a lesser included offense of pandering. Defendant asserts that contributing to the delinquency of a minor is a lesser included offense of pandering "under the accusatory pleading test." As explained below, defendant has failed to show error.

#### A. *Legal Principles and the Standard of Review*

"California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all

4

supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence." (*People v. Birks* (1998) 19 Cal.4th 108, 112.)

" 'On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense.' [Citation.] 'For purposes of determining a trial court's instructional duties, we have said that "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." ' [Citation.] When applying the accusatory pleading test, '[t]he trial court need only examine the accusatory pleading.' [Citation.] '[S]o long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense.' [Citation.]" (*People v. Banks* (2014) 59 Cal.4th 1113, 1160, italics omitted, abrogated on another point by *People v. Scott* (2014) 61 Cal.4th 363, 391, fn. 3.)

Defendant was charged with pandering by inducement under Penal Code section 266i, which criminalizes conduct that "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute." (Pen. Code, § 266i, subd. (a)(2).) The proscribed activity of encouraging someone "to become a prostitute," as set forth in Penal Code section 266i, includes encouraging someone to continue to be a prostitute. (*People v. Zambia* (2011) 51 Cal.4th 965, 980-981.) The information here specified that the victim, Jane Doe, was 17 years old.

5

The crime of contributing to the delinquency of a minor is codified in Penal Code section 272. "Penal Code section 272 makes it a misdemeanor to commit any act or fail to perform a duty that encourages a minor to commit an unlawful act or violate a court order, in other words, to contribute to the delinquency of a minor." (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 709.)

**B.** *Defendant Has Failed to Show Instructional Error*

Here, we need not determine whether contributing to the delinquency of a minor is a lesser included offense of pandering under the accusatory pleading test. Even assuming that contributing to the delinquency of a minor is a lesser included offense of pandering, defendant has failed to show that there was substantial evidence of contributing to the delinquency of a minor.

Defendant presents the following theory of substantial evidence for instruction on contributing to the delinquency of a minor: "[I]f [defendant's] testimony was believed, then he neither threatened Jane nor behaved violently with her. [Record citation.] A jury could find that he contributed to her delinquency because he knew she was a prostitute [record citation], and knew that she was a minor. [Record citation.] Furthermore, the jury could believe that, despite his denial [record citation], he knew that Jane had accompanied Lisa Banner to Monterey for the purpose of engaging in prostitution. Thus, a jury could find that Jane's role as a prostitute was independent of any action by appellant, but that he contributed to it or implicitly encouraged it by failing to report her activities to the appropriate authorities and by standing by and allowing Banner to facilitate Jane's prostitution." Defendant emphasizes that a jury could conclude that he "did nothing to stop" Jane Doe's prostitution.

Defendant's theory for instruction on contributing to the delinquency of a minor is based on his failure to act, namely his failure to report Jane Doe's prostitution to the authorities and his failure to prevent Banner from facilitating Jane Doe's prostitution.

6

"Unlike the imposition of criminal penalties for certain positive acts, which is based on the statutory proscription of such conduct, when an individual's criminal liability is based on the *failure* to act, it is well established that he or she must first be under an existing legal duty to take positive action." (*People v. Heitzman* (1994) 9 Cal.4th 189, 197, italics in original.) Defendant fails to identify any evidence suggesting that he was under a legal duty to take positive action in regard to Jane Doe's prostitution, and we have found none. Additionally, defendant fails to cite any legal authority demonstrating that he was under a legal duty to take positive action in regard to Jane Doe's prostitution, and we are aware of none. Given the absence of substantial evidence and legal authority supporting defendant's theory, we must conclude that the trial court did not err in failing to sua sponte instruct on contributing to the delinquency of a minor. (See generally *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error."].)

## II. *The Stay-Away Order*

At the sentencing hearing, the trial court imposed the following stay-away order upon defendant: "You shall have no contact with Jane Doe or her family. You are not to annoy, molest, attack, strike, threaten, harass, stalk, sexually assault, or disturb the peace of Jane Doe and stay at least 100 yards away from her, her residence, her employer, vehicles, and any school that she may attend." Defendant contends that we must strike this stay-away order because the trial court "did not have the power" to impose it. (Capitalization omitted.)

### A. *The Trial Court had Statutory Authority to Impose the Stay-Away Order*

Penal Code section 136.2, subdivision (i)(1) states, in relevant part: "In all cases in which a criminal defendant has been convicted of a crime that . . . requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of

7

sentencing, shall consider issuing an order restraining the defendant from any contact with the victim.  The order may be valid for up to 10 years, as determined by the court. This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail, . . . or whether imposition of sentence is suspended and the defendant is placed on probation."  (Pen. Code, § 136.2, subd. (i)(1).)

Penal Code section 290, subdivision (c) provides that any person convicted of violating Penal Code section 266i, subdivision (b) "shall be required to register." Defendant, who was convicted of violating Penal Code section 266i, subdivision (b), was thus required to register pursuant to Penal Code section 290, subdivision (c).  Because defendant was required to register pursuant to Penal Code section 290, subdivision (c), Penal Code section 136.2, subdivision (i)(1) authorized the trial court to impose the stay-away order.

**B.**  *The Stay-Away Order Does Not Conflict With Ex Post Facto Principles*

Defendant does not dispute that Penal Code section 136.2, subdivision (i)(1) authorizes stay-away orders like the one imposed here.  Rather, defendant contends that application of Penal Code section 136.2, subdivision (i)(1) to his case violates ex post facto principles because that subdivision "was added by amendment enacted on September 9, 2013 and became effective on January 1, 2014, nearly two years after [defendant] was alleged to have committed the offenses."  We find no ex post facto violation.

"[T]he ex post facto clauses of the state and federal Constitutions are 'aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." ' [Citations.]"  (*People v. Grant* (1999) 20 Cal.4th 150, 158.)  Defendant concedes that Penal Code section 136.2, subdivision (i)(1) did not alter the definition of his crime.  He contends, however, that it increased the punishment for his crime.

8

In determining whether Penal Code section 136.2, subdivision (i)(1) increased the punishment for defendant's crime, "we consider 'whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent.' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 755 (*Alford*).) " 'If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " [Citations.] Because we "ordinarily defer to the legislature's stated intent," [citation], " 'only the clearest proof' "will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," [citations].' [Citations.]" (*Ibid.*)

Penal Code section 136.2, subdivision (i)(1) sets forth legislative intent : "It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." (Pen. Code, § 136.2, subd. (i)(1).) Given this stated intention, it is apparent that the Legislature enacted Penal Code section 136.2, subdivision (i)(1) for the purpose of victim protection, a nonpunitive intention. Thus, the issue is whether Penal Code section 136.2, subdivision (i)(1) is so punitive in nature or effect that it must be found to constitute punishment.

Defendant makes the following argument regarding the punitive nature and effect of Penal Code section 136.2, subdivision (i)(1): "An order restraining a defendant's freedom of movement, association and speech for up to 10 years is clearly punitive in effect, particularly if the defendant lives near the victim or is related to or acquainted with the victim and/or his or her family or friends. In such cases, a defendant would be

9

prohibited from a host of activities and associations.  Relationships currently in place would be lost or severely damaged."

Defendant has failed to show that Penal Code section 136.2, subdivision (i)(1) is so punitive in nature or effect that it constitutes punishment.  Defendant has not shown that the stay-away order here actually infringes on his freedom of movement, freedom of association, or freedom of speech:  he does not state that he lives near the victim, he does not state that he is related to the victim, he does not state that he is acquainted with the victim's family and friends, he does not identify any activities that he is precluded from pursuing due to the stay-away order, and he does not identify any relationships that would be lost or destroyed due to the stay-away order.  Moreover, defendant ignores the circumstance that he is serving a nine-year prison sentence.  Given that Penal Code section 136.2, subdivision (i)(1) authorizes a stay-away order with a maximum duration of 10 years, there is only a short period of time during which defendant must conform his movement and conduct to the terms of the stay-away order.  Finally, we see nothing in Penal Code section 136.2, subdivision (i)(1) that suggests that it is generally punitive in nature; an order prohibiting victim contact for up to ten years is rationally related to the nonpunitive purpose of victim protection and cannot be deemed excessive with respect to that purpose.  (*Alford, supra,* 42 Cal.4th at p. 757 [relevant factors in determining whether a statute is punitive include whether the statute has a rational connection to a nonpunitive purpose and whether the statute is excessive with respect to this purpose].)  In light of the foregoing, we must conclude that Penal Code section 136.2, subdivision (i)(1) does not constitute punishment, and application of that subdivision to defendant's case does not violate ex post facto principles.

**C.** *The Trial Court Erred in Failing to Specify the Duration of the Stay-Away Order*

Finally, we find an error in the stay-away order not identified by defendant. The trial court failed to specify the duration of the stay-away order. Penal Code section 136.2, subdivision (i)(1) authorizes a stay-away order lasting "up to 10 years," not a stay-away order of unlimited duration. Thus, although the trial court had the power to impose the stay-away order here, we nonetheless must reverse and remand so that the trial court may re-impose the stay-away order with a specified duration.

**III. *Penal Code Section 654 and the Pandering Conviction***

Defendant contends that the concurrent prison term imposed for the pandering conviction must be stayed pursuant to Penal Code section 654 because the pandering and human trafficking convictions involved an "indivisible course of conduct" during which, "according to the jury's verdict, [defendant] forced [Jane Doe] to engage in acts of prostitution." The Attorney General concedes that the prison term must be stayed, noting that "the pandering and human trafficking counts involved the same course of conduct, the same victim and objective."

Penal Code section 654 provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Pen. Code, § 654, subd. (a).) Penal Code section 654 "precludes multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) Penal Code section 654 "does not allow any multiple punishment, including either concurrent or consecutive sentences." (*Id.* at p. 592.)

11

We accept the Attorney General's concession.  We accordingly will order the prison term imposed for the pandering conviction to be stayed pursuant to Penal Code section 654.

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions to:  1) re-impose the stay-away order with a specified duration; and 2) stay the prison term for the pandering conviction (Pen. Code, § 266i, subd. (b)) pursuant to Penal Code section 654.

_____
RUSHING, P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.